UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONDUCTIVE TECHNOLOGIES, INC., | : <br> : No. <br> : |
| *Plaintiff,* | : <br> : |
| v. | : <br> : |
| HISCOX INSURANCE COMPANY INC., | : <br> : <br> : |
| *Defendant.* | : |

# COMPLAINT

Plaintiff, Conductive Technologies, Inc. ("CTI"), by and through its undersigned counsel, hereby brings this civil action against Defendant Hiscox Insurance Company, Inc. ("Hiscox"), and in support hereof, avers as follows:

## I.   INTRODUCTION

This lawsuit arises from the failure of an insurance company to meet its contractual obligations to its insured.  That insured, CTI, has lost substantial sums as the result of fraudulent wire transfers on an account owned by CTI with PNC Bank, N.A. ("PNC"). CTI has purchased commercial criminal insurance coverage from Hiscox, and the relevant Hiscox policy clearly requires that Hiscox reimburse CTI for those losses.  Nonetheless, Hiscox has failed to agree to reimburse CTI and has not provided Hiscox with any basis for its failure to honor its policy

obligations. Despite repeated requests, Hiscox has not conveyed a clear and unambiguous coverage position to CTI. Hiscox's wrongful conduct has been in conscious and knowing disregard of the interests of its insured, CTI.

## II. PARTIES

1. Plaintiff, CTI, is a Pennsylvania corporation with its principal place of business at 935 Borom Road, York, Pennsylvania 17404.

2. Defendant Hiscox, is an insurance company incorporated in Illinois with its principal place of business at 104 South Michigan Ave., Chicago, Illinois 60603.

## III. JURISDICTION AND VENUE

3. This Court has jurisdiction over CTI's claim pursuant to diversity jurisdiction under 28 U.S.C. § 1332 because the amount in controversy is over $75,000 and the lawsuit involves citizens of different states.

4. This action is also brought pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201.

5. Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims set forth herein took place in this District.

6. The Court has personal jurisdiction over Hiscox in that it regularly conducts business in this District.

## IV. FACTUAL BACKGROUND

7. CTI is a contract manufacturer to the medical device and industrial markets.

8. CTI maintains a bank account with PNC.

9. On June 2, 2022, CTI encountered difficulties logging into its PNC account. As a result of several communications between CTI and PNC, CTI discovered that a number of fraudulent wire transfers (the "Fraudulent Transfers") had resulted in funds being withdrawn from CTI's account. These transfers were not initiated, requested, or authorized by CTI.

10. Fourteen (14) Fraudulent Transfers were completed on June 2, resulting in a total of $3,504,105.77 being withdrawn from CTI's account. An additional sixteen (16) Fraudulent Transfers were attempted on June 2 in the amount of $3,559,009.79, but as CTI's account had been drained of funds these attempts were unsuccessful.

11. Subsequent to June 28, PNC has recovered certain sums that were fraudulently transferred from CTI's PNC account on June 2, resulting in a loss of

$1,242,525.49 as the date of filing of this Complaint.  PNC has advised CTI that it does not expect that sum to be recovered.

## V.     HISCOX POLICIES AND CTI's CLAIM

12.    Hiscox issued Hiscox Commercial Crime Insurance Policy No. UC22211722.21 to Topflight Corp., with a policy period of April 1, 2022 to April 1, 2023 (the "Policy").  CTI is an additional named insured under Endorsement 4 of the Policy.  A copy of the Policy is attached hereto as Exhibit A.

13.    The limits of liability under the Policy are $500,000 per transfer, less the Policy's deductible of $5,000 per transfer.

14.    The Policy provides that Hiscox "will pay covered amounts" under the Policy.  Coverage "D" of the Policy provides coverage for: (1) loss of or damage to money, securities or other property resulting directly from computer fraud.

15.    "Computer fraud" is defined by the Policy to include "the use or manipulation of any computer system to money, securities or other property from inside the premises or financial institution premises to a person (other than a messenger) or place outside the premises or financial institution premises" ; and (2) funds transfer, defined as "loss of or damage to money or securities contained in your transfer account sustained by you resulting directly from funds transfer

fraud." CTI's loss as a result of the Fraudulent Transfers is a covered amount under both of those definitions.

16. On June 28, 2022, CTI submitted a Proof of Loss with Hiscox with respect to the Fraudulent Transfers (the "Proof of Loss"). At the time that CTI submitted the Proof of Loss and accompanying documentation, CTI had incurred a minimum loss of $2,937,829.09 as a result of the Fraudulent Transfers.

17. The estimated loss of $2,937,829.09 identified in the Proof of Loss was based on PNC's estimate of the amount of each Fraudulent Transfer that PNC believed at that time to be recoverable.

18. Subsequent to CTI's filing of the Proof of Loss, Hiscox requested additional information regarding the Fraudulent Transfers, which CTI provided.

19. On July 21, 2022, CTI made a formal claim to Hiscox for reimbursement of the loss incurred as a result of the Fraudulent Transfers.

20. Hiscox responded to CTI's July 21 demand by asking for further information regarding the Fraudulent Transfers, although CTI had provided sufficient information to substantiate a claim under the Policy for reimbursement of the losses incurred as a result of the Fraudulent Transfers.

21. On August 18, 2022, CTI renewed its demand for coverage and reimbursement under the Policy, while providing Hiscox with all additional information in CTI's possession regarding the Fraudulent Transfers and the status of recovery of funds fraudulently transferred from CTI's PNC account on June 2.

22. CTI has updated Hiscox concerning the status of efforts to recover funds transferred from CTI's account as a result of the Fraudulent transfers.

23. Hiscox has failed to reimburse CTI or agree to reimburse CTI for the loss associated with the Fraudulent Transfers.

24. Despite CTI's multiple requests to Hiscox for reimbursement of the losses associated with the Fraudulent Transfers, Hiscox has failed to agree to reimburse CTI for those losses and has also failed to provide a clear and unequivocal coverage position to CTI.

25. Hiscox's conduct as averred in this Complaint constitutes conscious and knowing indifference to the rights of CTI, its insured.

**COUNT I – DECLARATORY JUDGMENT (28 U.S.C. § 2201)**

26. CTI incorporates the averments of Paragraph 1 through 25 of this Complaint as though set forth fully.

27. CTI's losses incurred as a result of the Fraudulent Transfers are covered losses within the meaning of the coverage provisions of the Policy.

28. Hiscox's refusal to reimburse CTI for the losses incurred as a result of the Fraudulent Transfers constitutes a breach of the contract of insurance embodied in the Policy.

29. In addition, Hiscox's unreasonable refusal to reimburse CTI for the losses incurred as a result of the Fraudulent Transfers and its failure to communicate a clear and unambiguous coverage position to CTI regarding the reimburse CTI for the losses incurred as a result of the Fraudulent Transfers constitutes a breach of the implied covenant of good faith and fair dealing inherent in the Policies.

30. Hiscox's conduct as averred herein constitutes conscious and knowing indifference to the rights of CTI, its insured.

WHEREFORE, CTI request that the Court enter judgment in its favor and against Defendant Hiscox enter an order declaring that: (i) the Fraudulent Transfers fall within the scope of coverage provided by the Policy; (ii) Hiscox is obligated to reimburse CTI for any and all losses incurred as a result of the Fraudulent Transfers; and (iii) Hiscox has breached the implied covenant of good faith and fair dealing present in the Policy by unreasonably failing to reimburse CTI for the

losses incurred as a result of the Fraudulent Transfers and by failing to communicate to CTI a clear and unambiguous coverage position.

## COUNT II – BREACH OF CONTRACT

31. CTI incorporates the averments of Paragraph 1 through 30 of this Complaint as though set forth fully.

32. CTI's claims for losses incurred by the Fraudulent Transfers are covered losses within the meaning of the coverage provisions of the Policy.

33. HISCOX's failure to reimburse CTI for loss associated with the Fraudulent Transfers constitutes a breach of Hiscox's obligation under the Policies.

34. CTI has complied with all of its duties and obligations under the Policy.

35. As a result of Hiscox's breach of contract, CTI has incurred damages in excess of $75,000.00.

WHEREFORE, Plaintiff CTI University requests that the Court enter judgment in its favor and against Defendant Hiscox requiring Hiscox (i) to reimburse CTI for any and all losses incurred as a result of the Fraudulent Transfers; and (ii) pay CTI for all other damages incurred by CTI as a consequence of Hiscox's breach, in an amount to be determined at trial in excess of $75,000.00, together with attorneys' fees, interest, and any other relief this court deems just.

Dated: September 15, 2022

/s/ Matthew H. Haverstick
**KLEINBARD LLC**
Matthew H. Haverstick (PA ID No. 85072)
Paul G. Gagne (PA ID No. 42009) (*pro hac vice* to be filed)
Three Logan Square, 5th Floor
Philadelphia, PA 19103
(215)568-2000
mhaverstick@kleinbard.com
pgagne@kleinbard.com

*Attorneys for Plaintiff Conductive Technologies Inc.*